**FIFTH DIVISION**
**RICKMAN, P. J.,**
**MERCIER and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.gov/rules**

**June 1, 2026**

# In the Court of Appeals of Georgia

A26A0410. JOHNSON & JOHNSON et al. v. MONROE.

RICKMAN, Presiding Judge.

Johnson & Johnson and Johnson & Johnson Consumer Inc. (collectively "Johnson & Johnson") appeal from the trial court's order granting the motion for new trial filed by Charvette E. Monroe, as executrix of the estate of Margie G. Evans. Johnson & Johnson contend that the trial court's order failed to sufficiently detail the reason or reasons for the exercise of its discretion, the evidence presented at trial was legally insufficient to support a verdict in the plaintiff's favor, and the limitation on

appellate review enshrined in OCGA § 5-5-50[1] violates Johnson & Johnson's constitutional right to a jury trial. For the following reasons, we affirm.

The record shows that Charvette E. Monroe ("the plaintiff") sued Johnson & Johnson, alleging that asbestos in Johnson's Baby Powder caused her mother Margie Evans's terminal ovarian cancer. In October 2021, following a lengthy trial, the jury rendered a defense verdict. The plaintiff filed a motion for new trial, which she subsequently amended, based on the general grounds, OCGA §§ 5-5-20 and 5-5-21.[2]

After a hearing on the motion, the trial court granted the plaintiff's motion for new trial, stating:

> After careful review and consideration of the applicable law, the trial, the evidence, and the submissions of the parties, and having considered the conflicts in the evidence, the credibility and demeanor of the witnesses,

---

[1] OCGA § 5-5-50 provides: "The first grant of a new trial shall not be disturbed by an appellate court unless the appellant shows that the judge abused his discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the presiding judge."

[2] Under OCGA § 5-5-20, a presiding judge may grant a new trial "[i]n any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity[.]" Similarly, under OCGA § 5-5-21, "[t]he presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding."

and the weight of the evidence admitted at trial, the Court finds the verdict of the jury is contrary to the evidence and the principles of justice and equity, and it is decidedly and strongly against the weight of the evidence in this case.

Johnson & Johnson obtained a certificate of immediate review and filed an application for interlocutory review of the trial court's order, which this Court granted. This appeal followed.

1. We first consider our jurisdiction in this case. The Supreme Court of Georgia "has exclusive jurisdiction over all cases in which the constitutionality of a law ... has been drawn into question." *Williams v. Regency Hosp.*, 318 Ga. 145, 147 (897 SE2d 466) (2024) (punctuation omitted). A constitutional challenge must be raised at the earliest opportunity. *State v. Herrera-Bustamante*, 304 Ga. 259, 263(2)(a) (818 SE2d 552) (2018); *Hardeman v. State*, 272 Ga. 361, 361 (529 SE2d 368) (2000). The plaintiff argues that Johnson & Johnson waived its constitutional argument by failing to raise it at the earliest opportunity. Johnson & Johnson contends that its challenge to OCGA § 5-5-50 was necessarily made for the first time on appeal. See *In the Interest of A. C.*, 285 Ga. 829, 832(1) (686 SE2d 635) (2009) (recognizing that "a challenge to the

constitutionality of a statute governing appellate procedure … is necessarily made for the first time on appeal").

In its application for interlocutory appeal, Johnson & Johnson argued that (1) appellate guidance is needed on how trial courts should apply OCGA §§ 5-5-20 and 5-5-21 in civil cases; (2) trial courts should issue case-specific findings when granting motions for new trial on the general grounds; and (3) the trial court abused its discretion in granting a new trial and the law and facts require a defense verdict. Johnson & Johnson also argued that we should interpret OCGA § 5-5-50 to allow the reversal of a grant of a new trial "when the evidence does not preponderate heavily against the jury verdict[.]" Importantly, Johnson & Johnson did not argue that OCGA § 5-5-50 is unconstitutional as applied to this case. The closest Johnson & Johnson came to making any sort of constitutional challenge was in a footnote, where it asserted — without citing OCGA § 5-5-50 — that without guidance, "new trial grants in civil cases like this one would be unconstitutional." Only after the appeal was docketed in this Court did Johnson & Johnson raise, for the first time, a clear and direct challenge to the constitutionality of OCGA § 5-5-50, as applied here.

The Supreme Court of Georgia has held that an application for discretionary appeal must enumerate the errors to be argued on appeal, "and so, when we grant discretionary review, it necessarily is limited to the errors actually enumerated in the application." *Zekser v. Zekser*, 293 Ga. 366, 369(2) (744 SE2d 698) (2013). See also *Miller v. State*, 374 Ga. App. 360, 366(3) (912 SE2d 733) (2025) ("In cases in which an appellant has attempted to raise additional errors beyond [those enumerated as error in the application,] we have declined to consider those additional claims of error.") Similarly, an applicant for interlocutory appeal must set forth the need for an appeal and "the issue or issues involved therein." OCGA § 5-6-34(b). It follows that when we grant an interlocutory appeal, our review is likewise limited to the issues set forth in the application. Pretermitting whether Johnson & Johnson's challenge to OCGA § 5-5-50 was necessarily made for the first time on appeal, because Johnson & Johnson did not list its constitutional challenge as one of the issues for appeal in its application for interlocutory appeal, it failed to raise the issue at the earliest opportunity and the issue "is not properly before us." *Miller*, 374 Ga. App. at 366(3). Because Johnson & Johnson's constitutional challenge was not timely raised, "this constitutional challenge is not reviewable and its enumeration does not remove this

5

case from this [C]ourt's jurisdiction." *Harper v. State*, 213 Ga. App. 611, 612(1) (445 SE2d 300) (1994).

2. Johnson & Johnson argues that we should vacate and remand the trial court's order for individualized reasoning, which Johnson & Johnson contends is required by OCGA § 5-5-51. We disagree.

OCGA § 5-5-51 provides as follows:

> In all civil cases in which a new trial is granted, if the grant of a new trial is based on the discretion of the judge, the judge shall set forth by written order the reason or reasons for the exercise of his discretion. Such order shall not be required to conform to the provisions of Code Section 9-11-52, relating to findings by the court.

Johnson & Johnson contends that the plain text of OCGA § 5-5-51 requires individualized reasoning for all new trial grants on the general grounds.

Johnson & Johnson acknowledges that this Court "approved a similarly bare-bones new trial order" in *Jackson National Life Ins. Co. v. Snead*, 231 Ga. App. 406, 409(2) (499 SE2d 173) (1998), but contends that *Jackson National Life Ins. Co.* was wrongly decided and should be overturned. We decline to do so. In *Jackson National Life Ins. Co.*, the trial court granted the plaintiff's motion for new trial on the general

grounds. Id. at 406. The defendant argued that the trial court's order was a nullity "because it failed to state the court's reasons for exercising its discretion as required by OCGA § 5-5-51." Id. at 409(2). This Court held that the trial court's order was "in compliance with the requirements of OCGA § 5-5-51" because it "expressly applie[d] the principle that a new trial may be granted on the general grounds 'to correct what it considers to be an unfair and unjust verdict' and 'to accomplish justice.'" Id. The trial court's order in this case similarly complied with the requirements of OCGA § 5-5-51 by stating that the reason for granting a new trial was the judge's determination that the verdict was contrary to the evidence and the principles of justice and equity and was decidedly and strongly against the weight of the evidence. Consequently, this enumeration provides no basis for reversal. See id.

Johnson & Johnson argues that, even if this Court does not overrule *Jackson National Life Ins. Co.*, we should vacate and remand the trial court's order for further reasoning because the trial court "telegraphed" that it would apply the wrong legal standard. Johnson & Johnson contends that it is not clear that the trial court applied the correct legal standard because at the motion for new trial hearing, the trial judge

7

asked the parties what she was allowed to consider in deciding whether to grant a new trial.

The Supreme Court of Georgia has held that it must be "clear that the trial court applied the correct legal standard and exercised its discretion" in ruling on a motion for new trial on the general grounds. *State v. Denson*, 306 Ga. 795, 799(2)(a) (833 SE2d 510) (2019). However, our Supreme Court has also held that "unless the record shows otherwise, we must presume that the trial court understood the nature of its discretion and exercised it. [We] will thus presume, in the absence of affirmative evidence to the contrary, that the trial court did properly exercise such discretion." *Wilson v. State*, 302 Ga. 106, 108(II)(a) (805 SE2d 98) (2017) (citation modified). Here, the record does not show that the trial court failed to properly exercise its discretion based upon the correct legal standard. The trial court's order explicitly states that the court reviewed and considered the applicable law, the trial, the evidence, the submissions of the parties, conflicts in the evidence, the credibility and demeanor of the witnesses, and the weight of the evidence admitted at trial. The trial court concluded in its order that "the verdict of the jury is contrary to the evidence and the principles of justice and equity, and it is decidedly and strongly against the

weight of the evidence in this case." Thus, Johnson & Johnson's argument that the trial court's order should be vacated and the case remanded fails.

3. Johnson & Johnson next argues that the trial court's order must be reversed under OCGA § 5-5-50 because the law and facts require a defense verdict. Again, we disagree.

As noted above, OCGA § 5-5-50 provides: "The first grant of a new trial shall not be disturbed by an appellate court unless the appellant shows that the judge abused his discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the presiding judge." The first grant of a new trial will be reversed "only if the evidence of record absolutely demanded the verdict as rendered." *Bhansali v. Moncada*, 275 Ga. App. 221, 222(1) (620 SE2d 404) (2005). In making this determination, this Court must "construe the evidence, together with all reasonable deductions and inferences therefrom, most strongly in favor of the *losing* party." Id.

Here, Johnson & Johnson contends that the evidence demanded the verdict rendered by the jury because one of the plaintiff's experts, Dr. Victor Roggli, "repeatedly conceded" that "asbestos doesn't cause ovarian cancer," and

epidemiological studies evaluating the relationship between cosmetic talc use and ovarian cancer do not support the plaintiff's causation theories.

Dr. Roggli was called by the plaintiff as an expert in pathology and asbestos-related diseases and testified about what he found in Margie Evans's autopsy tissues. On direct examination, he was not asked whether asbestos causes ovarian cancer. On cross-examination, Dr. Roggli was asked, "you've already published that in your opinion the science doesn't support the notion or the position that asbestos causes ovarian cancer, right?" Dr. Roggli responded, "Chapter 8, that's correct, yes, sir." Dr. Roggli was then asked, "And you told them in the deposition, asbestos doesn't cause ovarian cancer?" Dr. Roggli answered, "Correct." Dr. Roggli also testified, "I don't think that the epidemiology is sufficient to say that asbestos causes ovarian cancer."

However, one of the plaintiff's other expert witnesses, Dr. Jacqueline Moline, testified that "[a]sbestos causes ovarian cancer." Dr. Moline specifically testified that Margie Evans's use of Johnson's Baby Powder "contributed to the development or caused the development of her ovarian cancer." Another plaintiff's expert witness, Dr. Charles William Jameson, testified that it has been "accepted with scientific

certainty that talc-containing asbestos is a known human carcinogen" and that "exposure to cosmetic grade talc causes ovarian cancer[.]" The plaintiff also presented expert testimony from Dr. John Chan that talc can cause ovarian cancer. Thus, the evidence in this case regarding causation was clearly in conflict.

Johnson & Johnson argues that a jury could never have relied on Dr. Jameson and Dr. Chan "over the medical consensus and the concession of [p]laintiff's own expert witness." According to Johnson & Johnson, Dr. Jameson and Dr. Chan were "simply ignoring the largest, most telling studies." Johnson & Johnson maintains that the only statistically significant studies that the plaintiffs identified reflected such a weak association between talc use and ovarian cancer that they fail to establish causation. Johnson & Johnson further contends that the plaintiff's experts' testimony does not acknowledge or account for serious flaws in the studies they cite, and that, on this record, no rational trier of fact could have credited the plaintiff's experts over Johnson & Johnson's expert and the medical consensus to find that talc use increases the risk of ovarian cancer.

Given the conflicting evidence in this case, and construing the evidence and all reasonable deductions and inferences therefrom most strongly in favor of the plaintiff,

as we are required to do, see *Bhansali,* 275 Ga. App. at 222(1), the evidence does not demand a verdict for Johnson & Johnson. Accordingly, we cannot say that the trial court abused its discretion in granting the plaintiff's motion for new trial. See *Jackson National Life Ins. Co.*, 231 Ga. App. at 409(1) (trial court did not abuse its discretion in granting plaintiff's motion for new trial where verdict for defendant was not demanded by the evidence).

*Judgment affirmed. Mercier and Hodges, JJ., concur.*